UNITED STATES v. FRITZSCHE BROS., INC. (No. 4572) [1]

United States Court of Customs and Patent Appeals, November 17, 1947

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Sybil Phillips*, special attorneys, of counsel), for the United States.
*John D. Rode* for appellee.

[Oral argument October 7, 1947, by Mr. Weeks and Mr. Rode]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The United States appeals from a judgment of the Second Division, Appellate Term, of the United States Customs Court, affirming the judgment of the trial court in a reappraisement proceeding adjudging that export value, as defined in section 402 (d) of the Tariff Act of

[1] C. A. D. 371.

1930, is the proper basis for the determination of the value of certain imported musk pods and holding such value to be the entered value.

The imported merchandise consists of musk-secreting glands or sacs, known as pods, obtained from the bellies of male musk deer found in the Himalaya Mountains of Tibet. The deer are hunted primarily for the obtaining of the musk pods. After having been killed, a small portion of the deer's hide containing the pod is removed and locally traded by the hunter. The pods are finally collected by dealers who offer them through brokers to the trade dealing in perfume materials. The value of the pods is the "aromatic principle" contained in the musk grains which are extracted from the pods, and either sold as such or in the form of an alcoholic tincture.

It appears from the invoice that pursuant to a contract 200 ounces of the merchandise were purchased by appellee in India at $21 per ounce "net weight of goods in their original state at time of shipment to New York by parcel post." When the pods arrived at the port of New York, they weighed 184½ ounces. The importation was entered at a value of $20 per ounce plus the packing charges. The goods were appraised by the appraiser at $20 per ounce plus 8.40108 per centum, net, plus the cost of packing. The difference between the invoiced and landed weights was caused by shrinkage or evaporation during transportation. It was stipulated that the addition by the appraiser to the entered value was made because, in his opinion, the value of the goods had increased by reason of loss in weight. It was further stipulated that appellee paid the invoice price without any deduction for loss of weight and that no allowances had been made for such loss. Export value as defined in section 402 (d) of the Tariff Act appears as follows:

(d) Export Value.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The pertinent portion of the Customs Regulation of 1943 upon which the appraiser relied is:

14.3 Appraisement of merchandise; determination of value.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(e) When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity · has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

It appears that as the pods lose moisture and thus decrease in weight, that some of the "aromatic principle," which is the valuable

constituent of the musk, is lost, and the merchandise is rendered less valuable for its ultimate use. In the brief of appellant, it is admitted that appellee has "conclusively shown" such loss in value. It further appears, as was held below, that in the purchase and sale of musk pods in India that the moisture content of the pods is not a factor; that the pods are purchased in the ounce unit and any risk of loss by evaporation after shipment is assumed by the purchaser without any allowance therefor being made.

The tribunals below held it had been clearly shown that the loss of moisture from the pods did not result in increase of value thereof for the reason that some of the most valuable part of the musk (the odoriferous constituents) were lost.

The Government contends that appellee has not sustained its burden of proving that the value found by the appraiser is incorrect in that there is no evidence to support the findings below, and that, therefore, both the trial and appellate court erred in rejecting the appraiser's determination of the value of the merchandise.

There can be no question, in view of the uncontradicted evidence, that the value of the unit of quantity of the involved merchandise has not correspondingly increased as the weight thereof decreased. Therefore, the subsection of the Customs Regulation, above noted, is not applicable.

Of course it was the burden of the appellee to establish the true export value of the merchandise. In our opinion it has sustained that burden. It challenged the correctness of the addition by the appraiser of 8.40108 per centum to the entered value, and our decision in the case of *United States* v. *Freedman & Slater, Inc.*, 25 C. C. P. A. (Customs) 112, T. D. 49241, is authority for the propriety of such challenge. In that case we stated that while the appraisement as it comes before the trial court must be presumed to constitute in all of its items the true value of the merchandise, the one who challenged the correctness of such value may do so in respect of any of such items. Appellee challenged the item of 8.40108 per centum, and by uncontradicted evidence overcame the presumption of correctness attaching to that item. Because, however, the importer had challenged that item only and no other item of the appraisement, the presumption of correctness as to all those others is not destroyed, and, therefore, they stand as presumptively correct. It appears to us, as it did to the trial and appellate courts, that the appraiser found that the sum of $20 per ounce, which was the entered value, represented the export value of the merchandise pursuant to section 402 (d), *supra*. How he arrived at that value is of no concern.

Appellee does not dispute that the practice with respect to article 14.3, *supra*, and sanctioned by this court in the case of *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286, is

both reasonable and correct, but appellee contends, and properly in our opinion, that the facts in the instant case are such that that case does not apply here for the reason that it has been clearly established that there was no increase in value due to evaporation or otherwise.

The appraiser clearly considered the *per se* value of the merchandise to be $20 per ounce, and because it was his opinion that the merchandise had increased in value in proportion to the decrease in weight, he made the aforesaid addition to such value.

Since it has been clearly shown that the decrease in the weight of the pods not only did not increase the value thereof, but lessened the value, the advance has been demonstrated to be improper.

For the reasons herein stated, the judgment of the United States Customs Court is *affirmed.*